## Case No. 14,333.

### The UNADILLA.

[9 Chi. Leg. News, 427; 2 Mich. Lawy. 441.]

District Court, E. D. Michigan. 1877.

ADMIRALTY—DISTRIBUTION OF PROCEEDS OF SALE —PRIORITIES.

In the distribution of proceeds of sale, claims for towage and necessaries are entitled to rank those for breaches of contract of affreightment.

The barque was originally attached upon a libel for towage. A number of other libels were filed for towage and necessaries, and one for a breach of contract on the part of the owners of the vessel in failing to deliver a cargo of coal. The barque was sold, and the proceeds paid into court. Upon an order classifying claims, the clerk reported that the claims for towage and necessaries were entitled to rank that of Martin Bogle, for breach of contract of affreightment.

F. H. Canfield, for original libellant.
H. H. Swan, for libellant Bogle.

BROWN, District Judge. The sole question involved in the exception relates to that of priority, as between the claims for towage and necessaries, and that for a breach of contract of affreightment. The question is alluded to in only one American case, viz. The America [Case No. 288], the syllabus of which indicates that the court assigned the lien of the freighter to the lowest class, but I do not find the point decided, or even discussed in the opinion. There is an entire absence of English authority upon this point. Valin, in discussing the French law upon this subject, says that "the right of the merchant who would seek to make this privilege available, ranks low in the order of precedence of privileged claims against the ship. The legal expenses attending a sale, the demands for pilotage and custody of the vessel, for stowage of furniture and apparel, for repairs at the last port, for the wages of master and mariners, accrued during the

last voyage, for moneys borrowed by the master on his last voyage. for purchase money of ship furniture and stores remaining unpaid, for sums due to material men, shipwrights and lenders on bottomry before her last departure from port, and for premiums of insurance, being most of them justly preferred to it. The privilege of the ship-owner against the goods for his freight is of a more beneficial character." In the Commercial Code of France (article 191), in that of Spain (article 599), and in that of Portugal (article 1307), claims of this kind are assigned to the lowest rank, immediately following those for premiums of insurance. Emerigon, in his work upon Bottomry Loans, objects to this classification, and observes that "shippers whose goods have been lost or injured by other causes than perils of the sea. ought to be ranked first, even before seamen, seeing that similar losses and damage are often occasioned by the act of the crew." It seemed to him that they ought at least to have precedence over those who have made loans before the departure of the ship, because they have no knowledge of the necessaries and moneys furnished in the way of equipment. But he says: "It has pleased the ordinance (of Louis XIV.) not to place them in this rank." Dufour (Droit Mar. vol. 1, p. 325), thus treats of this classification: "We remark, nevertheless, that this classification is founded upon reasons more solid than simple caprice. It may be, indeed, that the fault of the crew sometimes contributes to the loss and damage of the merchandise, but we should not forget that his labor and courage often save that which remains of the pledge to which the liens attach. For this reason. in the most ancient maritime customs, the lien of mariners has always ranked that of merchants. As to lenders and material men, their co-operation in the safety of the pledge is perhaps less directly manifest, and less certain in fact, but we know that in law the presumption which militates in their favor is the same. I do not see, then, that the criticisms of Emerigon are well founded. There is, perhaps, a single class of liens against which this ought on principle to be protected, viz. that of the underwriter for the amount of his premium. For, as I have already observed, insurance is only a private affair of the debtor. Its object is the interest of the owner rather than that of the ship. Nevertheless, we can understand that the wish to encourage insurance, this gigantic lever of maritime commerce, has been able to temper in their favor the rigorous deductions of reason." In passing upon novel questions like these, and in the absence of English and American precedents, I think the maritime law of continental Europe furnishes a safe guide. It is for the interest of commerce that its laws be uniform. The exceptions are overruled.